IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| METRO RENOVATION, INC., | ) | 4:05CV3083 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| ALLIED GROUP, INC., and | ) | |
| NATIONWIDE MUTUAL | ) | |
| INSURANCE COMPANY, INC., | ) | |
| | ) | |
| Defendants. | ) | |

In this diversity case, Metro Renovation, Inc. (Metro) has sued Allied Group, Inc. (Allied) and Nationwide Mutual Insurance Company, Inc. (Nationwide). Metro claims that it purchased insurance from Allied and Nationwide on a customized show car. Metro asserts that the car was stolen and cut into pieces. Among other theories of recovery, Metro asserts that Allied and Nationwide breached their fiduciary duty under Nebraska law[1] when they failed to pay Metro the value of the stolen car.

As to this one theory of recovery, Allied and Nationwide move to dismiss for failure to state a claim upon which relief can be granted. They argue that Nebraska has not and will not recognize a tort for breach of a fiduciary duty in a circumstance like this one. Specifically, they argue that when an insurance company fails to pay a claim for money due the insured on a "first-party"[2] insurance contract, and the

---

[1] The parties have assumed that Nebraska law applies and so do I.

[2] A "first-party insurance" policy protects the insured from his or her own losses, while a "third-party" policy provides liability insurance that protects the insured from claims resulting from the losses of others. Douglas R. Richmond, Trust Me: Insurers Are Not Fiduciaries to Their Insureds, 88 Ky. L.J. 1, 2 (2000) (hereinafter Trust Me). In the third-party situation, the insurance company will

insured sues the insurance company to recover that money, the failure to pay the money to the insured, even if wrongful, is not actionable as a breach of a fiduciary duty.

Considering the motion to dismiss as a motion for judgment on the pleadings, I agree with the defendants. I will dismiss the "breach-of-fiduciary-duty" claim. Briefly, my reasons for this decision are set forth below.

## I.  BACKGROUND

I will first describe the amended complaint. Then I will discuss the pleading context in which this issue arose.

### A.  *The Amended Complaint*.

In its amended and verified complaint, Metro asserts three theories of recovery: (1) breach of contract (filing 24, at 5-6); (2) breach of an implied covenant of good faith and fair dealing by virtue of the defendants' bad faith (filing 24, at 6-7); and (3) breach of fiduciary duty. (Filing 24, at 7-8.) The factual grounds urged in support of each of these theories are the same.

Condensed, the material facts (as opposed to legal conclusions), which I assume to be true for purposes of this motion,[3] are set forth below:

---

typically have the power to defend and control litigation regarding the claims of strangers asserted against the insured.

[3]Neither party has offered facts extrinsic to the amended complaint.

* Metro is a Nebraska corporation that bought insurance from Allied and Nationwide, foreign corporations who do business in Nebraska. (Filing 24 ¶¶ 1-3, 8.)

* In particular, Metro bought and paid for comprehensive insurance covering loss for theft and damage to a customized 2001 Chevrolet Corvette Z06. (Id. ¶¶ 8-10, 16, 17.) The vehicle was built and customized as a show car to display the products sold by Metro. (Id. ¶ 11.)

* On or about July 6, 2003, the car was stolen, and in September of that year, remnants of the vehicle were found in a "chop shop." (Id. ¶ 13.)

* The defendants determined that the vehicle was a total loss. (Id.) As of August 26, 2004, the loss was $90,010. (Id. ¶ 15.)

* Metro promptly notified the defendants of the claim and provided documentation to support it. (Id. ¶¶ 19-20.)

* Despite having accepted premiums, the defendants wrongly denied and continue to wrongly deny coverage "for the amount of reimbursement requested by Metro." (Id. ¶¶ 21, 32-37.)

### B. The Pleadings.

After the amended complaint was filed, both defendants answered. (Filings 29 & 31.) Both defendants raised the defense of failure to state claim upon which relief could be granted in their answers. (Filing 29 ¶ 42; Filing 31 ¶ 41.)

After these answers were filed, the defendants filed a motion entitled "Rule 12(b)(6) Motion of Defendants Allied Group, Inc., and Nationwide Mutual Insurance Company, Inc." (Filing 33.) In that motion, they asked the court to dismiss the "third theory of recovery (breach of fiduciary duty) of Plaintiffs' [sic] Amended Complaint for the reason that it fails to state a claim upon which relief can be granted." (Id.)

## II. ANALYSIS

Initially, I resolve Metro's argument that the defendants' motion to dismiss for failure to state a claim is untimely. After that, I discuss the merits of the dispute.

### A. The Court Will Convert the Motion to Dismiss to a Motion for Judgment on the Pleadings.

Metro correctly argues that the defendants' Rule 12(b)(6) motion is untimely because it was filed after the defendants answered. Technically, a motion to dismiss for failure to state a claim upon which relief may be granted cannot be filed after an answer has been submitted because the rule itself makes such a motion untimely. Fed. R. Civ. P. 12(b)(6).

However, and as Metro admits,[4] the defendants can raise the same issue by filing the same motion but calling it a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). In circumstances like this one, particularly where the defense of failure to state a claim has been preserved in the answer, the courts will typically convert a so-called Rule 12(b)(6) motion to a Rule 12(c) motion. See, e.g., WestCott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990) (motion to dismiss for failure to state a claim upon which relief can be granted would be treated as if styled as a motion for judgment on the pleadings, where motion was made after answer had been submitted). See also 5C Charles Alan Wright & Arthur R. Miller,

---

[4]Filing 41, Brief in Opposition to Defendants' Motion to Dismiss, at 2.

Federal Practice and Procedure § 1361, at 93-94 (2004) (stating that "federal courts have allowed untimely motions if the defense has been previously included in the answer").

When converted, the Rule 12(c) motion is treated like a Rule 12(b)(6) motion. That is, the motion will be granted "only if 'it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.'" Westcott, 901 F. 2d at 1488 (citation omitted).

As a result, and recognizing that the defendants preserved their defense in the answers, I convert the Rule 12(b)(6) motion to a Rule 12(c) motion. I nevertheless apply the same deferential standard to the amended complaint that I would be required to use under Rule 12(b)(6).

***B. Under Nebraska Law, When an Insured and an Insurance Company Have a Dispute About Payment of Money Under a "First-Party" Insurance Contract, the Failure to Pay the Money, Even if Wrongful, Does Not Trigger a Cause of Action for Breach of a Fiduciary Duty.***

There is a general rule that I will discuss first. Then, I will examine Nebraska's probable adoption of that general rule.

***1. The General Rule.***

Well-regarded treatise writers have observed that:

> As a general rule, the relation between the parties to a contract of insurance is that of debtor and creditor; that is, of one contracting party to another contracting party, rather than of trustee and cestui que trust, or such as would arise by virtue of a will or other testamentary instrument. The relation is a legal one rather than an equitable one.

3 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3D § 40.7, at 40-9 (1995) (footnotes omitted).

Indeed, "something more than the mere fact of an insurance relationship is required to establish a fiduciary relationship." 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3D § 198.7, at 198.16 (1999) (footnote omitted). The "something more" typically arises only in third-party insurance contracts. For example, where the insurance company takes on additional responsibilities (beyond simply paying money) to protect the insured from the claims of third parties (such as by assuming the responsibility of controlling litigation), a fiduciary relationship may be implied. Id. at n.36 (citing Chavez v. Chenoweth, 89 N.M. 423, 553 P.2d 703 (N.M. Ct. App. 1976)).

In summary, while courts have recognized that an insured may have a tort-like claim for bad faith against an insurance company for failure to pay money that is due the insured under a "first-party" insurance contract, those same courts have balked at imposing "strict fiduciary duties" on insurance companies where the relationship between the insured and the insurance company was of the "debtor-creditor type." See, e.g., Szumigala v. Nationwide Mut. Ins. Co., 853 F.2d 274, 280 n.7 (5th Cir. 1988) (applying Mississippi law; holding that while insured could maintain action for bad-faith failure to pay medical benefits regarding death of insured's son pursuant to underinsured motorist policy, relationship between insured and insurance company was "of a debtor-creditor type" and thus "we refuse to impose a fiduciary relationship upon the parties"); Lauzon v. State Farm Mut. Auto Ins. Co., 674 A.2d 1246, 1248 (Vt. 1995) (applying Vermont law and following Szumigala).[5]

---

[5] For a more detailed explanation of the reasons justifying decisions like these, and the difference between "bad-faith" claims and "breach-of-fiduciary-duty claims" in the "first-party" context, see Douglas R. Richmond, Trust Me, 88 Ky. L. J. at 7-8.

## *2. Nebraska Would Follow the General Rule.*

Although Nebraska has not resolved the precise question presented in this litigation, it has come close on two occasions. From those cases, I am persuaded that Nebraska would follow the general rule. That is, when an insured and an insurance company have a dispute about payment of money under a "first-party" insurance contract, the failure to pay the money, even if wrongful, does not trigger a cause of action for breach of a fiduciary duty.[6] The two cases upon which I rely for this conclusion are discussed next.

Nebraska allows an injured policyholder to bring a first-party cause of action in tort against an insurer for bad-faith failure to settle the policyholder's claim. Braesch v. Union Ins. Co., 464 N.W.2d 769, 776 (Neb. 1991) (claim for uninsured motorist benefits).[7] In arriving at this decision, the Nebraska Supreme Court distinguished between the theories underlying first-party claims and third-party claims brought by policyholders.

The court said the two theories are different because the obligations of the insurance company are different depending upon whether the claim is based upon a "first-party" contract or a "third-party" relationship. That is, "the theory underlying the tort of bad faith settlement of a first-party claim is that there is an implied covenant of good faith and fair dealing" and this "covenant is dependent upon a contractual relationship between the plaintiff and the insurer." Id. at 776. In contrast,

---

[6] To be clear, and as discussed in the text, Nebraska does recognize a claim for bad faith in cases like this. The defendants do not contend otherwise. Indeed, they have not moved to dismiss the plaintiff's bad-faith claim.

[7] Regarding an unrelated issue, Braesch has been disapproved by Wortman by and Through Wortman v. Unger, 578 N.W.2d 413, 550-51 (Neb. 1998) (prejudgment interest). Nevertheless, Braesch remains good law for principles discussed in the text.

the "theory underlying the liability" in a third-party case is predicated upon "a fiduciary relationship between the insured and insurer[.]" Id. at 772-773.

The second case which convinces me that Nebraska would adopt the general rule is American Driver Svc., Inc. v. Truck Ins. Exchange, 631 N.W.2d 140 (Neb. Ct. App. 2001) (holding that no fiduciary relationship existed between insured and insurance company providing workers' compensation coverage where insured sued for overpayment of premiums; thus there was no basis for tolling the statute of limitations). In arriving at this decision, the Nebraska Court of Appeals parsed the meaning of Braesch as it regarded first-party claims. The court concluded that:

> Thus, although the Nebraska Supreme Court found that in a first-party claim, the insurer owed the insured the duty of good faith and fair dealing, this duty was not a fiduciary duty, but instead was based upon the reasonable expectations of the insured and the parties' unequal bargaining positions.

Id. at 146.

I agree with the commentator who stated that "the American Driver court reached the correct result" under Nebraska law. Douglas R. Richmond, Bad Insurance Bad Faith Law, 39 Tort Trial & Insurance Practice L.J. 1, 37 (2003). This is because the "inherent tension between the insurer and the insured in the first-party relationship repels fiduciary theory. Beyond that, the first-party insurance relationship is dominated by contract law, and fiduciary theory generally finds no application there." Id. at 37-38.

### III. CONCLUSION

Nebraska would adopt the general rule and not allow a fiduciary-duty claim in this first-party insurance dispute. Therefore, the defendants' motion must be granted.

Accordingly,

IT IS ORDERED that the defendants' motion (filing 33), construed as a motion for judgment on the pleadings, is granted. The plaintiff's breach-of-fiduciary-duty claim (filing 24, at 7-8) is dismissed for failure to state a claim upon which relief can be granted under Nebraska law.

September 29, 2005.                    BY THE COURT:

                                       *s/Richard G. Kopf*
                                       United States District Judge